# In the
# United States Court of Appeals
## for the Eighth Circuit

D.M., a minor, by Bao Xiong, the mother, legal guardian, and next friend of D.M.; Z.G., a minor, by Joel Greenwald, the father, legal guardian, and next friend of Z.G.,

*Plaintiffs-Appellants,*

v.

MINNESOTA STATE HIGH SCHOOL LEAGUE; BONNIE SPOHN-SCHMALTZ, in her official capacity as President of the Board of Directors for the Minnesota State High School League; ERICH MARTENS, in his official capacity as Executive Director of the Minnesota State High School League; CRAIG PERRY, in his official capacity as an Associate Director of the Minnesota State High School League; BOB MADISON, in his official capacity as an Associate Director of the Minnesota State High School League,

*Defendants-Appellees.*

Appeal from the United States District Court
for the District of Minnesota, No. 0:18-cv-02140-PAM.
The Honorable **Paul A. Magnuson**, Judge Presiding.

## AMICUS BRIEF IN SUPPORT OF AFFIRMANCE FOR APPELLEES MINNESOTA STATE HIGH SCHOOL LEAGUE, ET AL

Mallory V. Mayse (Lead Counsel)
MAYSE LAW FIRM
Suite 411-Guitar Building
28 North Eighth Street
Columbia, MO 65201
573-875-1988

*Counsel for Amicus Curiae Missouri State High School Activities Association*

Edward W. McCorkle
MCMILLAN, McCORKLE & CURRY, LLP
929 Main Street
P. O. Box 607
Arkadelphia, AR 71923
870-246-2468

*Counsel for Amicus Curiae Arkansas Activities Association*

**(ADDITIONAL COUNSEL ON NEXT PAGE)**



Rex R. Schultze
PERRY LAW FIRM
233 South 13th Street, Suite 1400
Lincoln, NE 68508
402-476-9200

*Counsel for Amicus Curiae Nebraska
School Activities Association*

Rachel A. Bruner
PEARCE DURICK PLLC
P. O. Box 400
Bismarck, ND 58502-0400
701-223-2890

*Counsel for Amicus Curiae
North Dakota High School Activities
Association*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure Rule 26(1), the Amici are non-profit, voluntary unincorporated associations lawfully formed by action of each association's member schools. Amici have no parent corporation and no stockholders.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................ i

TABLE OF CONTENTS ............................................................. ii

TABLE OF AUTHORITIES ........................................................ iii

IDENTITY AND INTEREST OF *AMICI* ............................................ 1

FRAP RULE 29(a)(4)(E) STATEMENT ............................................ 3

ARGUMENT ...................................................................... 4

    The District Court Did Not Abuse Its Discretion or
    Otherwise Err in Denying a Preliminary Injunction
    Enjoining the MSHSL from Enforcing the Rule
    Prohibiting Boys from Participating on the Girls' High
    School Dance Team Because:

    I.    Appellants Failed to Show Likelihood of Success
        on the Merits ........................................................ 4

    II.   Appellants Failed to Show That Any Harm to
        Appellants Would Outweigh the Substantial
        Harm Inflicted on Others ...................................... 21

    III.  The Public Interest and Balance of Equities Favored
        Denial of the Preliminary Injunction ................... 22

CONCLUSION .................................................................... 22

CERTIFICATE OF COMPLIANCE .............................................. 24

CIRCUIT RULE 28A(h) CERTIFICATE ....................................... 25

CERTIFICATE OF SERVICE .................................................... 26

# TABLE OF AUTHORITIES

## CASES

*Brentwood Academy v. Tennessee Secondary Schools Athletic Association*, 531 U.S. 288 (2001) ............................ 19

*City of Timber Lake v. Cheyenne River Sioux Tribe*, 10 F.3d 554 (8th Cir. 1993) ................................................. 5

*Clark v. Arizona Interscholastic Association,* 695 F.2d 1126 (9th Cir. 1982), *cert. denied*, 464 U.S. 818, 104 S. Ct. 79, 78 L. Ed. 2d 90 (1983) .................................... *passim*

*Clark v. Arizona Interscholastic Association*, 886 F.2d 1191 (9th Cir. 1989) ..................................................... 14, 15

*Craig v. Boren*, 429 U.S. 190, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976) ....................................... 6, 7, 11-12, 13

*Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir. *En Banc* 1981) ................................. 4, 5, 15

*Hoover v. Meiklejohn*, 430 F. Supp. 164 (D.Colo.1977) ......................... 17

*Kahn v. Shevin*, 416 U.S. 351, 94 S. Ct. 1734, 40 L. Ed. 2d 189 (1974) .......................................................... 12

*Kleczek v. Rhode Island Interscholastic League*, 612 A.2d 734 (1992) ............................................................. 18

*Kleczek v. Rhode Island Interscholastic League, Inc.*, 768 F. Supp. 951 (D.R.I. 1991) ................................ 15, 16, 17

*Michael M. v. Sonoma County Superior Court*, 450 U.S. 464, 101 S. Ct. 1200, 67 L. Ed. 2d 437 (1981) ...................................... 12

*Mississippi University for Women v. Hogan*, 458 U.S. 718, 102 S. Ct. 3331, 73 L. Ed. 2d 1090 (1982) ............................ 15

*Mularadelis v. Haldane Central School Board,* 427 N.Y.S. 2d 458, 74 A.D. 2d 248 (N.Y. App. Div., 1980) ...................... 8, 9, 11, 17

*Petrie v. Illinois High School Association, et al.,* 75 Ill. App. 3d 980, 394 N.E. 2d 855, 31 Ill. Dec. 653 (4th Dist. 1979) ............................................................ *passim*

iii

*Schlesinger v. Ballard*, 419 U.S. 498, 95 S. Ct. 572, 42 L. Ed. 2d 610 (1975) ..................................................................... 13

## FEDERAL STATUTES & RULES

20 U.S.C. § 1681 *et seq.*.................................................................... *passim*

Federal Rules of Appellate Procedure 29(a)(2) ......................................... 1

Federal Rules of Appellate Procedure 29(a)(4)(E) ................................... 3

## CONSTITUTIONAL PROVISION

Equal Protection Clause of the United States Constitution .......... *passim*

## STATE STATUTES

Minnesota statute § 121A.03 (2014) ....................................................... 19

Minnesota statute § 121A.04 (2014) ....................................................... 19

## OTHER AUTHORITIES

Missouri State High School Activities Association – http://www.mshsaa.org .................................................................. 2

Arkansas Activities Association – http://www.ahsaa.org ...................................................................... 2

Nebraska School Activities Association – http://www.nsaahome.org ................................................................ 2

North Dakota High School Activities Association – http://www.ndhsaa.com ................................................................. 2

## IDENTITY AND INTEREST OF AMICI

Amici Missouri State High School Activities Association, Arkansas Activities Association, Nebraska School Activities Association and North Dakota High School Activities Association are all high school activity associations (hereinafter collectively referred to as "Amici"). Amici are the counterparts of Appellee Minnesota State High School League (hereinafter "MSHSL") in their respective states. Amici have obtained consent to file their brief from Appellants and Appellees, pursuant to FRAP Rule 29(a)(2). Amici are non-profit, voluntary unincorporated associations lawfully formed by action of each association's member schools. Membership in each association is voluntary and is comprised of various public and private high schools within their respective states. Amici are not directly supported by public tax revenues but derive the largest portion of their operating revenues from member fees, sponsorships and championship gate receipts.

The purpose of these high school associations is to implement rules for interscholastic competition in their respective states promulgated by the member schools, and to oversee and conduct

interscholastic competitions and statewide championships between member schools. All Amici provide in their constitutions for a democratic governing structure whereby the member schools participate in developing, drafting and approving all rules governing the member schools and the participation of students in sports and activities sponsored by the associations. To that end, the Amici have each enacted by-laws and rules in their respective states governing their member high schools.[1] Member schools of each association contractually agree to abide by these by-laws and rules in their respective states as the minimum required standards for conducting the school's interscholastic program.

These associations are committed to the development of America's youth through participation in high school interscholastic competition in a myriad of activities, including athletics, speech, debate and music. Amici submit this brief and urge this Court in support of Appellees

---

[1] The constitution and by-laws of each of each Amici association can be found on their respective internet websites, to-wit: Missouri State High School Activities Association - http://www.mshsaa.org; Arkansas Activities Association - http://www.ahsaa.org; Nebraska School Activities Association - http://www.nsaahome.org; and North Dakota High School Activities Association - http://www.ndhsaa.com.

Minnesota State High School League, et al. to affirm the District Court's Memorandum and Order dated September 27, 2018, denying Appellant's Motion for a Preliminary Injunction because the governance of interscholastic competition by and among the member schools of each of the above named activities associations operating within states subject to the jurisdiction of the Eighth Circuit U.S. Court of Appeals providing and promoting sports exclusively for female students could otherwise be adversely and substantially impacted.

## FRAP RULE 29(a)(4)(E) STATEMENT

No legal counsel of any party authored any part of this brief, nor contributed money that was intended to fund any preparation or submittal of this brief. No person other than Amici, their members or their counsel contributed any money that was intended to fund preparation or submission of this brief.

# ARGUMENT

The District Court Did Not Abuse Its Discretion or Otherwise Err in Denying a Preliminary Injunction Enjoining the MSHSL From Enforcing Its Rule Prohibiting Boys from Participating on the Girls' High School Dance Team Because:

## I.

Appellants Failed to Show Sufficient Likelihood of Success on the Merits

Appellants challenge a MSHSL rule that girls' dance is a girls-only sport. They contend that this rule violates both Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq. (hereinafter "Title IX") and their rights under the Equal Protection Clause of the United States Constitution (hereinafter "Equal Protection"). Appellants sought a Preliminary Injunction prohibiting the MSHSL from enforcing the girls-only dance team rule (District Court Memorandum and Order, p. 2).

When considering a motion for preliminary injunction, a district court must consider the four factors established in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. En Banc 1981.) In balancing these equities, "no single factor is determinative" and "if the chance of irreparable injury to the movant should relief be denied is

outweighed by the likely injury to other parties litigant should the injunction be granted, the ***moving party*** faces a ***heavy burden*** of demonstrating that he is likely to prevail on the merits," *Dataphase*, loc. cit. 113. A district court's grant or denial of a motion for preliminary injunction is reviewed on appeal to this Court for "abuse of discretion" or "misplaced reliance on an erroneous legal premise," *City of Timber Lake v. Cheyenne River Sioux Tribe*, 10 F.3d 554, 556 (8th Cir. 1993).

There have been several cases across the nation which have rejected similar Equal Protection and Title IX claims asserted by Appellants in this case involving male students seeking participation on high school sport teams exclusively preserved for female students.

In the first case, styled *Petrie v. Illinois High School Association, et al.,* 75 Ill. App. 3d 980, 394 N.E. 2d 855, 31 Ill. Dec. 653 (4th Dist. 1979), a male high school student brought an action challenging the constitutional validity of his high school's rule restricting membership to female students on the only volleyball team sponsored by the school and the validity of Illinois High School Association (hereinafter "IHSA") rules restricting participation to girls only on teams participating in the only statewide volleyball tournament sponsored by the IHSA. The

thrust of plaintiff's argument was that it was constitutionally

impermissible to have volleyball teams and tournaments only for girls

without opportunity for participation by boys, loc. cit 857. After hearing

on the merits, the circuit court dismissed the suit for want of equity.

The trial court reasoned that the prohibitions against boys were

classifications based on sex, but were justified because they preserved,

fostered and increased athletic competition for girls and prevented

unfair competition that would arise from male dominance of the game,

loc. cit. 857. Upon appeal, the Appellate Court of Illinois held that such

rules (1) did not violate the Due Process Clause of Fourteenth

Amendment, and (2) did not violate any state constitutional provision

prohibiting the state or its units of local government and school districts

from denying or abridging equal protection of the laws on the account of

sex. The Appellate Court correctly recognized that the United States

Supreme Court had never treated classifications based on gender as

suspect and subject to strict scrutiny. Rather, it had held in *Craig v.

Boren*, (1976), 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397, 407,

that gender based classifications "must serve important governmental

objectives and must be substantially related to achievement of those

objectives," loc. cit. 857. In affirming the trial court dismissal of

plaintiff's Due Process claims, the Appellate Court stated, loc. cit. 861-

862:

> Classification of a high school volleyball team to limit its
> membership to girls is consistent with a long-standing tradition in
> sports of setting up classifications whereby persons having
> objectively measured characteristics likely to make them more
> proficient are eliminated from certain classes of competition . . .
> There is no stigma attached to a person eliminated by this system
> from competing in a class in which that person might have undue
> advantage.

and then continued, loc. cit. 862:

> We have no trouble in concluding that having a separate
> volleyball team and separate tournaments in that sport for girls is
> substantially related to and serves the achievement of the
> important governmental objective of maintaining, fostering and
> promoting athletic opportunities for girls. It, therefore, satisfies
> the due process requirements of the fourteenth amendment.

Thus, the Appellate Court of Illinois held that the provision of a

separate volleyball program for girls to promote athletic opportunities

for girls without separately providing the same sport for boys did not

violate the state constitution protections for equal protection because of

inherent burdens and problems posed by joint participation, loc. cit. p.

862-865 stating:

> We conclude that to furnish exactly the same athletic
> opportunities to boys as to girls would be most difficult and would

be detrimental to the compelling governmental interest of equalizing general athletic opportunities between the sexes.

Within a year later came *Mularadelis v. Haldane Central School Board,* 427 N.Y.S. 2d 458, 74 A.D. 2d 248 (N.Y. App. Div., 1980) involving an eleventh grade male high school student who had been previously allowed to participate as one of two male members of a girls' tennis team at his high school. On March 8, 1979, the appellant school board adopted a new policy prohibiting the participation of boys on teams and in leagues organized to provide competition among girls, 427 N.Y.S. 2d at 460. The trial court vacated the new policy expressing its view that refusing boys an opportunity to play on the girls tennis team was not within either the letter or spirit of Title IX. At issue was the Title IX regulation language currently contained in 34 C.F.R., 106.41(b), 427 N.Y.S. 2d loc. cit. 461:

> …However, where a recipient operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex, **and athletic opportunities for members of that sex have previously been limited**, members of the excluded sex must be allowed to try-out for the team offered unless the sport involved is a contact sport. For the purposes of this part, contact sports include boxing, wrestling, rugby, ice hockey, football, basketball and other sports the purpose or major activity of which involves bodily contact. (Emphasis added)

Appellants in *Mularadelis* argued that the phrase "athletic opportunities" for members of that excluded sex "have previously been limited" should be interpreted in a <u>general</u> <u>sense</u>, that where <u>overall</u> athletic opportunities for members of a sex excluded from participation in a particular sport have been limited in the past, members of the excluded sex must be allowed to try out for the team from which they are excluded. Thus, because only women previously suffered limited overall athletic opportunities, the phrase in dispute referred only to women. The Court observed that such an interpretation would permit the formation of a separate female tennis team without males being allowed to try out for such female team because overall athletic opportunities for males had not been limited in the past.[2] On the other hand, respondent in *Mularadelis* argued, in effect, that the phrase meant opportunities in a "particular sport." Thus, in view of the fact that athletic opportunities for boys in tennis, a noncontact sport, had been previously limited at the subject high school, then respondent argued he must be permitted to try out for the girls' tennis team.

---

[2] As the record indicated, just prior to this dispute the subject high school district fielded 11 boys' teams and only 6 girls' teams.

Citing its own reasonable construction of the Title IX regulatory language and a 1975 Memorandum by the Department of Health, Education and Welfare, the Appellate Division rejected respondent's interpretation and adopted appellant school board's interpretation that "athletic opportunities" in the regulation refers to "an overall program" and <u>not</u> to "each individual sport" offered at an affected institution of learning, see 427 N.Y.S. 2d at 461-463 In rejecting the Equal Protection claims asserted, the Court further held that "precluding male students from becoming members of the girls' tennis team is a discernible and permissible means toward redressing previous disparate treatment of female students in scholastic athletic programs, loc. cit. 464.

In *Clark v. Arizona Interscholastic Association,* 695 F.2d 1126 (9th Cir. 1982), cert. denied, 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983), plaintiffs in the district court below challenged the Arizona Interscholastic Association (hereinafter "AIA") rule precluding boys from playing on girls' volleyball teams.[3] The Ninth Circuit U. S. Court

---

[3] The nondiscrimination policy of the AIA "permits participation by girls on boys['] teams in non-contact sports in order to compensate for the girls['] historical lack of opportunity in interscholastic athletics, however, boys are not allowed to play on girls['] teams in non-contact sports since boys historically have had ample opportunity for

of Appeals held that the rule did not violate Fourteenth Amendment
Equal Protection where said rule was reasonably related to the
legitimate governmental interests of redressing past discrimination
against girls in athletics and promoting equality of opportunity between
the sexes, following *Petrie v. Illinois High School Association,* supra,
and *Mularadelis v. Haldane Central School Board*, supra. From the
facts presented to the district court the following material facts were
cited, loc. cit. 1127:

> Generally, high school males are taller, can jump higher and are
> stronger than high school females. There are six basic skills
> necessary in volleyball—serving, passing, setting, digging, hitting
> and blocking. Of these skills, hitting and blocking are enhanced by
> physical size, strength and vertical jump. Males generally have
> the potential to be better hitters and blockers than females and
> thus may dominate these two skills in volleyball . . . these
> physiologically-derived differences in athletic potential have real
> impact on the game of volleyball.

In *Clark*, the Ninth Circuit recognized that the "intermediate level" of
scrutiny applies to gender classifications as established by the U.S.
Supreme Court in *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 457,

---

participation and currently have available to them sufficient avenues or
interscholastic participation, and since to allow boys to play on girls[']
teams in non-contact sports would displace girls from those teams and
further limit their opportunities for participation in interscholastic
athletics," loc. cit. 1127.

50 L.Ed.2d 397, 407 (1976), quoting 695 F3d at 1129 from *Craig v.*

*Boren*:

> To withstand constitutional challenge, previous cases establish
> that classification by gender must serve important governmental
> objectives and must be substantially related to achievement of
> those objectives.

Before applying this standard, the Ninth Circuit in *Clark* further

recognized that the Supreme Court has been willing to take into

account actual differences between the sexes, including physical ones,

695 F3d at 1129. For example, while upholding a statutory rape statute

that applied only to men, in *Michael M. v. Sonoma County Superior*

*Court*, 450 U.S. 464, 468-69, 101 S.Ct. 1200, 1204, 67 L.Ed.2d 437, 442

(1981), Justice Rehnquist noted that the "Court has consistently upheld

statutes where the gender classification is not invidious, but rather

realistically reflects the fact that the sexes are not similarly situated in

certain circumstances." Also see *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct.

1734, 40 L.Ed.2d 189 (1974) where the Supreme Court upheld a

property tax exemption for widows but not widowers, recognizing the

different financial opportunities available to men and women, supra at

353, 94 S.Ct. at 1736. And in *Craig v. Boren*, supra, the Supreme Court

conceded that a sex classification could be upheld if sex represented "a

legitimate accurate proxy" in a regulatory scheme, 429 U.S. at 204. Also see *Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975) (different promotion system for male and female naval officers approved because of different opportunities for combat duty).

As framed by the Ninth Circuit in *Clark*, the ultimate question was "whether denying boys the particular opportunity to compete on a girls' volleyball team, even when boys' overall opportunity is not inferior to girls', can be justified as substantially related to an important governmental interest," loc. cit. 1131. As recognized by the Court, the governmental interest at stake was "redressing past discrimination against women in athletics and promoting equality of athletic opportunity between the sexes," loc. cit. 1131.

The Ninth Circuit in *Clark* made it abundantly clear that redressing past discrimination against women in athletics to promote equal athletic opportunity is a "legitimate and important governmental interest," loc. cit. 1131 citing *Petrie v. Illinois High School Association, et al.,* supra. The Ninth Circuit in *Clark* found the record clear that due to average physiological differences, males would displace females to a substantial extent if they were allowed to compete for positions on the

volleyball team. Thus, athletic opportunities for women would be diminished. The Court found that the AIA was "simply recognizing the physiological fact that males would have an undue advantage competing against women for positions on the volleyball team, citing *Petrie*, supra, loc. cit. 1131. Thus, the Ninth Circuit concluded, loc. cit. 1131-1132:

> The situation here is one where there is clearly a substantial relationship between the exclusion of males from the team and the goal of redressing past discrimination and providing equal opportunities for women. . . But since absolute necessity is not the standard, and absolute equality of opportunity in every sport is not the mandate, even the existence of wiser alternatives than the one chosen does not serve to invalidate the policy here since it is substantially related to the goal. That is all the standard demands (citation omitted).

Seven years later, in the case of *Clark v. Arizona Interscholastic Association*, 886 F.2d 1191 (9th Cir. 1989), plaintiff (brother of the plaintiff in *Clark* I) raised the same legal challenge to the Arizona Interscholastic Association rule precluding boys from playing on girls' volleyball teams. The Ninth Circuit affirmed a district court grant of summary judgment against the plaintiff in favor of the AIA relying on its prior decision in *Clark* I. The Ninth Circuit reaffirmed that if males are permitted to displace females on the school volleyball team even to

the extent of one player like Clark, the goal of equal participation by

females in interscholastic athletics is "set back, not advanced," loc. cit.

1193. The Ninth Circuit, loc. cit. 1193, also reaffirmed its previous

statement in *Clark* I as follows:

> While equality in specific sports is a worthwhile ideal, it should
> not be purchased at the expense of ultimate equality of
> opportunity to participate in sports. As common sense would
> advise against this, neither does the Constitution demand it,
> citing *Clark* I, 695 F.2d at 1132.

The Ninth Circuit then reaffirmed its finding in *Clark* I, loc. cit. 1193,

that "due to physiological differences, males would displace females to a

substantial extent if they were allowed to compete for positions on the

volleyball team" and that "a State can evoke a compensatory purpose to

justify an otherwise discriminatory classification . . . if members of the

gender benefited by the classification actually suffer a disadvantage

related to the classification," citing *Mississippi University for Women v.*

*Hogan*, 458 U.S. 718, 728, 102 S.Ct. 3331, 3338, 73 L.Ed.2d 1090 (1982).

Two years later, another male student at a high school which

provided no field hockey team for boys sought participation on girls'

field hockey team at his school in *Kleczek v. Rhode Island*

*Interscholastic League, Inc.*, 768 F. Supp. 951 (D.R.I. 1991). Because his

high school did not field a boys' field hockey team, nor did any such teams exist in Rhode Island, the student tried out for the girls' team but was denied participation. His parents sued the school and Rhode Island Interscholastic League (hereinafter "RIIL") on behalf of their son in the U.S. District Court for the District of Rhode Island alleging violations of Title IX, Equal Protection, state constitution and statute. On review of plaintiff's Title IX claims within his motion for preliminary injunction, the district court determined that plaintiffs had not shown a likelihood of succeeding under the Title IX regulations, loc. cit. 954-955.

On the evidence, the district court in *Kleczek* found, in part, that the overall athletic opportunities "for males at plaintiff's high school" had not been "limited" and therefore, plaintiffs had not shown they were likely to succeed on the merits of their Title IX claim, loc. cit. 955-956.[4] Plaintiff's Equal Protection claim also failed because the district court further held that redressing disparate athletic opportunities for girls with the RIIL regulation was an important governmental objective and the regulation was substantially related to this objective, relying on

_____

[4] Plaintiffs had also not adequately shown that the programs and activities of the defendants received federal financial assistance, nor that field hockey was a "noncontact" sport.

*Clark v. Arizona Interscholastic Association*, 695 F.2d at 1131. The district court in *Kleczek* acknowledged, loc. cit. 956, that it is "beyond question" that redressing the disparate athletic opportunities available to males and females is an "important governmental interest," citing *Mularadelis*, 427 N.Y.S. 2d, supra at 464 and *Hoover v. Meiklejohn*, 430 F. Supp. 164, 170 (D.Colo. 1977) (noting that because the athletic opportunity for females had historically been limited, "the encouragement of female involvement in sports is a legitimate objective"). Excluding males from female teams is "substantially related" to achieving that objective. Accordingly, plaintiff's Motion for Preliminary Injunction was denied.

After denial of the federal court Preliminary Injunction, the same plaintiffs filed a new action in the state superior court seeking another injunction against the RIIL. The trial court improperly applied "strict scrutiny review" of the gender classifications while granting preliminary and permanent injunctive relief against the RIIL rule prohibiting boys from participating in girls' field hockey. The RIIL appealed to the state Supreme Court which vacated the trial court's injunction and remanded the matter to the trial court for

reconsideration under the proper standard of intermediate scrutiny, *Kleczek v. Rhode Island Interscholastic League*, 612 A2d 734 (1992). Citing *Petrie v. Illinois High School Association*, 394 NE2d 855 (1979), the Rhode Island Supreme Court in *Kleczek* II stated, loc. cit.739, "We are the opinion that the promotion of safety and the preservation of interscholastic athletic competition for both boys and girls constitute an important governmental interest."

As these cases clearly demonstrate, it is beyond the pale of fair debate that athletic opportunities for girls in interscholastic athletics have been historically limited. This concept permeates throughout the justification for Title IX, the above cases and the actions of the MSHSL in providing, protecting and expanding athletic opportunities for girls. Moreover, it cannot be fairly debated that the establishment and protection of single sex sports for girls is substantially related to the achievement of these important governmental objectives. It has worked.

Appellants begin their attack on the District Court actions of implementing a more stringent "likelihood of success" standard of review compared to a less stringent "fair chance" standard (Appellants' Opening Brief, pgs. 11-13). At the same time Appellants disavow

government action by the MSHSL, they must, at the same time, sustain their Equal Protection claims that the MSHSL is a "state actor." In *Brentwood Academy v. Tennessee Secondary Schools Athletic Association*, 531 U.S. 288 (2001), the Supreme Court held that the TSSAA could be considered a "state actor" for constitutional purposes because the TSSAA was "entwined" with the state sector since TSSAA members were largely public schools and the Board of Control and Legislative Council were made up of public school officials. Here, the MSHSL is not only "entwined" with the state sector through public school membership, the MSHSL is entwined with a state regulatory obligation to redress past discrimination and increase athletic opportunities for girls as mandated by Minnesota statute § 121A.03 and § 121A.04 (2014). Thus, the District Court did not rely on an erroneous legal premise in applying the "likelihood of success" standard. However, Appellants failed to prove either a "likelihood" or "fair chance" of success. The District Court concluded that the Appellants had not even raised "serious questions" to call for more deliberate investigation (District Court Memorandum and Order, pgs. 8-9).

As clearly demonstrated by the record below, the MSHSL established the girls' dance sport in 1996 which currently attracts 5,000 participants along with other exclusive girls' sports long ago to enhance the athletic opportunities for girls to meet the historical advantage of athletic opportunities for boys. The growth in participation numbers for girls is a direct reflection of their success but will not insulate against future erosion of opportunities for girls in Minnesota and nationwide if Appellants are successful. Nor do current participation numbers erase the historical record that overall athletic opportunities for girls have been more limited compared to boys. The MSHSL has taken deliberate action to correct this historical discrimination by providing and protecting exclusive sport participation for girls.

To bolster their Title IX argument that girls' dance is not a competitive "sport" requiring "competitive skill," Appellants concede that there is "an athletic component to dance" but argue that dance is primarily based on "artistic performance ability" (Appellants' Opening Brief, p. 29). This specious argument runs counter to the substantial record below and the May 10, 2018, opinion by the United States Department of Education Office for Civil Rights that MSHSL operates

girls' dance as an interscholastic sport. The evidence produced to the District Court by the MSHSL that girls' dance is a "competitive sport" requiring "competitive skill" was not only persuasive but was compelling. Amici will defer to the MSHSL, the OCR and the District Court findings on these issues. Accordingly, the District Court did not abuse its discretion or otherwise err in denying the preliminary injunction because the Appellants failed to show a likelihood of success on the merits.

## II.

### Appellants Failed to Show That Any Harm to Appellants Would Outweigh the Substantial Harm Inflicted on Others

The District Court below correctly held that the harm to the MSHSL was "extensive, if not irreparable" by undoubtedly throwing the "imminent dance team season into disarray" or "falling out of compliance with its obligations under Title IX," (District Court Memorandum and Order, p. 8).

Moreover, when two boys enter, two girls will be displaced and harmed. Furthermore, granting the relief sought by Appellants would turn the clock back by eroding the protection of single sex sports for girls in Minnesota which has taken decades to develop. In this case, it is

girls' dance today, but tomorrow, it will be gymnastics, softball, volleyball and synchronized swimming in Minnesota that will attract more boys to sue and displace girls in these sports. Beyond the borders of Minnesota, into the states of Amici and beyond into the nation, thousands of girls will be adversely impacted if Appellants prevail. Thus, the harm to others will be consequential, permanent and irreparable compared to any harm alleged by Appellants.

## III.

### The Public Interest and Balance of Equities Favored Denial of the Preliminary Injunction

Having found that the girls-only dance team rule did not violate either Title IX or Equal Protection under the U. S. Constitution, the District Court correctly stated that the "public interest therefore lies in denying the injunction" (District Court Memorandum and Order, p. 9).

## CONCLUSION

For all of the above reasons, and for the reasons submitted by Appellees in their briefs, the District Court Order denying the Motion for Preliminary Injunction should be affirmed.

Respectfully submitted,

/s/ Edward W. McCorkle
Edward W. McCorkle
MCMILLAN, McCORKLE &
CURRY, LLP
929 Main Street
P. O. Box 607
Arkadelphia, AR 71923
870-246-2468 (Phone)
870-246-3851 (Fax)
mccorkle@mtmc-law.com

*Counsel for Amicus Curiae
Arkansas Activities Association*

/s/ Mallory V. Mayse
Mallory V. Mayse (Lead Counsel)
MAYSE LAW FIRM
Suite 411-Guitar Building
28 North Eighth Street
Columbia, MO 65201
573-875-1988 (Phone)
573-449-3272 (Fax)
mal@mayselaw.com

*Counsel for Amicus Curiae
Missouri State High School
Activities Association*

/s/ Rex R. Schultze
Rex R. Schultze
PERRY LAW FIRM
233 South 13th Street, Suite 1400
Lincoln, NE 68508
402-476-9200 (Phone)
402-476-0094 (Fax)
rschultze@perrylawfirm.com

*Counsel for Amicus Curiae
Nebraska School Activities
Association*

/s/ Rachel A. Bruner
Rachel A. Bruner
PEARCE DURICK PLLC
P. O. Box 400
Bismarck, ND 58502-0400
701-223-2890 (Phone)
701-223-7865 (Fax)
rab@pearce-durick.com

*Counsel for Amicus Curiae
North Dakota High School
Activities Association*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5). This brief contains 4,386 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in fourteen (14) point Century font.

Dated:  November 26, 2018

/s/ Mallory V. Mayse
Mallory V. Mayse (Lead Counsel)
MAYSE LAW FIRM
Suite 411-Guitar Building
28 North Eighth Street
Columbia, MO 65201
573-875-1988 (Phone)
573-449-3272 (Fax)
mal@mayselaw.com

*Lead Counsel for Amicus Curiae*

## CIRCUIT RULE 28A(h) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 28A(h), a version of the brief in non-scanned PDF format. I hereby certify that the file has been scanned for viruses and that it is virus-free.

Dated: November 26, 2018

/s/ Mallory V. Mayse
Mallory V. Mayse (Lead Counsel)
MAYSE LAW FIRM
Suite 411-Guitar Building
28 North Eighth Street
Columbia, MO 65201
573-875-1988 (Phone)
573-449-3272 (Fax)
mal@mayselaw.com

*Lead Counsel for Amicus Curiae*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 26, 2018, an electronic copy of the Amicus Brief in Support of Affirmance for Appellees was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. The undersigned also certifies that the following participants in this case are registered CM/ECF users and that service of the Brief will be accomplished by the CM/ECF system:

Anastasia Boden
Timothy R. Snowball
Joshua P. Thompson
Caleb R. Trotter
PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111

*Counsel for Plaintiffs-Appellants
D.M. and Z.G.*

Erick G. Kaardal
MOHRMAN & KAARDAL
150 Fifth Street S., Suite 3100
Minneapolis, MN 55402
(612) 465-0927

*Counsel for Plaintiffs-Appellants
D.M. and Z.G.*

Kevin M. Beck
Joseph A. Kelly
Patrick J. Kelly
KELLY & LEMMONS, P.A.
2350 Wycliff Street, Suite 200
Saint Paul, MN 55114
(651) 224-3781

*Counsel for Defendants-Appellees Minnesota State High School League, Bonnie Spohn-Schmaltz, Erich Martens, Craig Perry, and Bob Madison*

Dated: November 26, 2018     /s/ Mallory V. Mayse
                                       Mallory V. Mayse (Lead Counsel)
                                       MAYSE LAW FIRM
                                       Suite 411-Guitar Building
                                       28 North Eighth Street
                                       Columbia, MO 65201
                                       573-875-1988 (Phone)
                                       573-449-3272 (Fax)
                                       mal@mayselaw.com

                                       *Lead Counsel for Amicus Curiae*