No. 18-3077

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

D.M., a minor, by BAO XIONG, the mother, legal guardian and next friend of
D.M.; and Z.G., a minor, by JOEL GREENWALD, the father,
legal guardian, and next friend of Z.G.,

Plaintiffs-Appellants,

v.

MINNESOTA STATE HIGH SCHOOL LEAGUE, et al.,

Defendants-Appellees.

On Appeal from the United States District Court
for the District of Minnesota-Third Division
Hon. Paul A. Magnuson, U.S. District Court Judge

**BRIEF OF *AMICUS CURIAE* NATIONAL FEDERATION OF STATE
HIGH SCHOOL ASSOCIATIONS IN SUPPORT OF APPELLEES AND
AFFIRMANCE**

WILLIAM E. QUIRK
POLSINELLI PC
900 W 48th Place, Suite 900
Kansas City, MO 64112
(816) 753-1000; FAX (816) 753-1536
wquirk@polsinelli.com

*Attorney for* Amicus Curiae *National
Federation of State High School
Associations*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

STATEMENT OF *AMICUS CURIAE* ................................................1

ARGUMENT ..................................................................................3

   **Introduction**................................................................................3

      I.     **Plaintiffs Consistently Downplay a Key Remedial Purpose of Title IX That Supports the District Court's Decision**....................4

          A.    **Title IX Was Intended to Remedy Past Lack of Sports Participation Opportunities for Girls.** ...................................5

          B.    **This Same Remedial Purpose Continues to be an Important Governmental Objective, as Reflected in Minnesota Law.** ........................................................8

      II.    **NFHS-Member State Associations Like Defendant MSHSL Should Have Discretion to Further Title IX's Goals by Evaluating and Encouraging Participation By Previously Underrepresented Girls Across All Available Sports.**...................10

CONCLUSION.................................................................................14

CERTIFICATE OF COMPLIANCE .................................................15

CIRCUIT RULE 28A(H) CERTIFICATION....................................16

CERTIFICATE OF SERVICE .........................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biediger v. Quinnipiac Univ.*,
  691 F.3d 85 (2d Cir. 1985) ...................................................................8, 12

*Hoover v. Meiklejohn*,
  430 F. Supp. 164 (Colo. 1977) ...........................................................5

*Kelly v. Bd. of Trustees*,
  35 F.3d 265 (7th Cir. 1994) ...............................................................11

*Kleczek v. Rhode Island Interscholastic League*,
  768 F. Supp. 951 (D.R.I. 1991) ..........................................................6

*McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*,
  370 F.3d 275 (2d Cir. 2004) ..............................................................11

*Mularadelis v. Haldane Cent. Sch. Bd.*,
  427 N.Y.S.2d 458, 462 (N.Y. App. Div. 1980) .................................6

*Petrie v. Ill. High Sch. Ass'n*,
  394 N.E.2d 855, 862 (Ill. App. 1979) .................................................9

*United States v. Virginia*,
  518 U.S. 515, 555 (1996) ....................................................................9

**Statutes**

Minn. Stat. § 121A.04, subd. 3(a) .........................................................8

**Other Authorities**

34 C.F.R. § 106.41(b) .............................................................................6

Lee Green, *Nine Ways Title IX Protects High School Students*,
  *available at* https://www.nfhs.org/articles/nine-ways-title-ix-
  protects-high-school-students/ ...........................................................5

NFHS Handbook 2018-19, *available at* https://www.nfhs.org/media/
  1019563/2018-19_nfhs_handbook.pdf................................4, 5, 9, 10

# STATEMENT OF *AMICUS CURIAE*

The National Federation of State High School Associations ("NFHS") is the national service and administrative organization of high school athletics. Founded in 1920, the NFHS is composed of one high school athletic or activities association in each of the fifty states and the District of Columbia. Approximately 90 percent of the high schools in the United States are members of state high school athletic or activities associations that are in turn members of the NFHS. In Minnesota, the Appellee Minnesota State High School League (MSHSL) is the NFHS member.

The NFHS serves its members by providing leadership for the administration of education-based high school athletics and activities through the writing of playing rules that emphasize health and safety, educational programs that develop leaders, and administrative support to increase participation opportunities and promote sportsmanship.

The NFHS also seeks to protect the role that interscholastic athletics play in education and to develop solutions to problems related to high school athletics, including compliance with Title IX. As part of that work, the NFHS has been compiling statistics since 1971-72 on boys' and girls' high school athletic participation, both nationwide, and by state.

This appeal concerns decision-making about whether a particular Minnesota high school activity should be considered a sport, and whether participation in it

should be limited to girls, taking into account among other things the current range of available Minnesota high school sports, as well as past opportunities for girls to participate. NFHS member associations throughout the country, and thus the NFHS itself, have an interest in how these issues are resolved, and in the scope of the associations' ability to resolve them.

No party's counsel authorized this brief in whole or in part. No party or party's counsel, and no party other than the NFHS and its counsel, contributed financially to the preparation or submission of this brief. Under Fed. R. App. P. 29(a)(2), all parties through their counsel have consented to the filing of this brief.

# ARGUMENT

## Introduction

Plaintiffs' argument that the MSHSL's approach to Dance Team competition violates both Title IX and the Equal Protection Clause of the Fourteenth Amendment depends heavily on their assertion that the historical underrepresentation of girls in Minnesota high school sports should no longer matter. Thus throughout their brief they minimize longstanding and well-recognized discrimination against girls' opportunities, stressing instead very recent data they say show *boys* are now somehow at a disadvantage. As part of this same effort to escape the importance of historical discrimination, both with respect to Title IX and, by extension, the Equal Protection Clause, Plaintiffs also urge this Court to overturn the MSHSL's 22-year- old decision to classify Dance Team as a competitive high school sport rather than an extracurricular activity.

The reality is that one of Title IX's main purposes has been—and still is—to remedy *past* discrimination in girls' athletic opportunities. And Minnesota law echoes this exact purpose by allowing current sex-participation rules to take into account *past* discrimination, thereby establishing it as an important governmental objective for purposes of Equal Protection.

The District Court properly refused to ignore the plain fact that girls have historically had far fewer athletic opportunities than boys. And it correctly rejected Plaintiffs' invitation to second-guess the MSHSL's reasoned decision to classify competitive Dance Team as an interscholastic sport. The decision below should be affirmed.

## I.  Plaintiffs Consistently Downplay a Key Remedial Purpose of Title IX That Supports the District Court's Decision.

Plaintiffs' brief consistently minimizes—or ignores outright—the well-documented, decades-old underrepresentation of girls in high school athletics. Thus they criticize the District Court's recognition of "previous" discrimination, and demand a "limiting principle" on how far back past missed opportunities should be relevant.  *See* Appellants' Br., p. 20. And instead of frankly acknowledging this undeniable historical underrepresentation, they prefer instead to focus on just the last year or two,[1] and to examine only a single sport, rather than consider, as Title IX does, overall participation opportunities and overall actual participation levels for both boys and girls.

---

[1] Contrary to Plaintiffs' brief, data compiled by the NFHS do not support the assertion that Minnesota boy athletes are currently underrepresented. *See* NFHS Handbook 2018-19, p. 55, *available at* https://www.nfhs.org/media/1019563/2018-19_nfhs_handbook.pdf (showing 2017-18 participation levels for boys in Minnesota as 122,595, as compared to 117,838 for girls). And nationwide, NFHS statistics show that in 2017-18, less than 43% of high school athletic participants were girls. *See id*. at p. 54 (4,565,580 boy participants as compared to 3,415,306 girl participants).

**A.** **Title IX Was Intended to Remedy Past Lack of Sports Participation Opportunities for Girls.**

When Title IX was enacted in 1972, boys' and girls' athletic participation levels stood in stark disparity to one another, according to NFHS historical statistics. In 1971-72, out of nearly 4 million high school athletes nationwide, fewer than 300 thousand, or less than 8 percent, were girls.[2] And in 1996, when the MSHSL first recognized Dance Team as a Minnesota high school competitive sport, girls' participation levels were still far below 50 percent,[3] even though Title IX had been in effect for more than 20 years.

Correcting this disparity was one of Title IX's principal goals. *See, e.g.*, Lee Green, *Nine Ways Title IX Protects High School Students*, *available at* https://www.nfhs.org/articles/nine-ways-title-ix-protects-high-school-students/, at p. 1 (noting Title IX requirement "that schools provide the historically underrepresented gender in sports – females – with equal opportunity to participate in athletic activities"). Importantly, though, the goal was not merely to correct the balance as it then existed, but to compensate going forward for the past discrimination that had already occurred. As the court explained in *Hoover v. Meiklejohn,* 430 F. Supp. 164, 170 (Colo. 1977), acknowledging this past lack of

---

[2] *See id*. (showing 1971-72 "Participation Survey Totals" as 3,666,917 for boys and only 294,015 for girls).

[3] *See id*. (showing that nationwide in 1995-96, girls comprised less than 40% of high school athletes (2,367,936 girls out of 6,001,988 total participants).

opportunity necessarily informs any decision on whether single-sex teams are still

necessary:

> Given the lack of athletic opportunity for females in past years, the
> encouragement of female involvement in sports is a legitimate
> objective and separation of teams may promote that purpose. *Ritacco
> v. Norwin School District*, 361 F. Supp. 930 (W.D. Pa.1973); *Bucha v.
> Illinois High School Association*, 351 F. Supp. 69 (N.D. Ill.1972). It
> may also justify the sanction of some sports only for females….

Regulations issued under Title IX recognize this exact point, and implicitly

allow current compensation for past lack of opportunities. As set forth in 34 C.F.R.

§ 106.41(b) (emphasis added):

> [W]here a recipient operates or sponsors a team in a particular sport for
> members of one sex but operates or sponsors no such team for members
> of the other sex, *and athletic opportunities for members of that sex have
> previously been limited,* members of the excluded sex must be allowed to
> try-out for the team offered unless the sport involved is a contact sport.

The court in *Kleczek v. Rhode Island Interscholastic League,* 768 F. Supp.

951 (D.R.I. 1991), correctly noted that under the "obvious plain meaning" of this

regulation, high school teams *could* be limited to girls-only when "athletic

opportunities" for boys had *not* been previously limited. *See also Mularadelis v.

Haldane Cent. Sch. Bd.*, 427 N.Y.S.2d 458, 462 (N.Y. App. Div. 1980) (affirming

school board's decision to exclude male student from team designated girls-only,

noting that Title IX regulation "permits exclusion of a person because of sex where

overall athletic opportunities in the past for members of that person's sex have not

been limited"). And as NFHS data show, boys historically have *not* been so limited, either in Minnesota, or nationally – quite the contrary.

The District Court grasped this important point, even as Plaintiffs have seemed largely oblivious to it. The District Court expressly recognized that the exception set out in the regulation indicates that single-sex sports are allowed under Title IX for members of a previously underrepresented sex:

> *The natural corollary* of the last line of the [§106] exception – providing that, *when athletic opportunities for one sex have been limited*, individuals of that sex must be allowed to try out for opposite-sex, non-contact sports – *is that schools are allowed to maintain single-sex sports for the underrepresented sex*. This is precisely what … the MSHSL has done. Title IX does not prohibit girls-only athletic teams such as dance teams.

Memo. and Order at 7 (App. 299) (emphasis added).

The District Court also stressed that the Department of Education's Office of Civil Rights ("OCR") has reached the same result with respect to the very issue now before the Court – the propriety of girls-only Dance Team in Minnesota. OCR, too, relied on the fact that girls have historically been underrepresented in Minnesota high school sports as it made the express determination that continuing to exclude boys from Dance Team was justified. *See* Memo. and Order at 6 (App. 298) (noting that a 2017 complaint filed with OCR raised the identical challenge as the current Plaintiffs—that Defendant MSHSL had violated Title IX by restricting Dance Team participation to girls—and summarizing OCR's response: "OCR

disagreed, finding that Minnesota's history of girls' underrepresentation in interscholastic athletics provided sufficient basis for a girls-only team").[4]

Plaintiffs' suggestion that "current data cannot justify continued discrimination against boys" even if past discrimination against girls has occurred (Appellants' Br., p. 18), simply ignores this well-recognized purpose to compensate for *historical* underrepresentation in both athletic opportunities and participation. Given this remedial purpose behind Title IX, it is not surprising that Plaintiffs are unable to muster significant authority for their view that Title IX cannot countenance MSHSL's decision to allow a girls-only team. On this record, the District Court correctly held that the MSHSL's designation of Dance Team as a girls-only sport did not violate Title IX.

### B. This Same Remedial Purpose Continues to be an Important Governmental Objective, as Reflected in Minnesota Law.

Minnesota law has expressly recognized this same Title IX concern with past discrimination in athletic opportunities. Minnesota Statute § 121A.04, subd. 3(a) provides:

---

[4] Although Plaintiffs repeatedly insist that this OCR determination shouldn't matter, because it is technically not binding on this Court, such an all-fours ruling by an agency charged with enforcing Title IX is certainly entitled to weight. *See Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 96-97 (2d Cir. 1985) (holding that various OCR guidance and interpretations merited judicial deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), *Auer v. Robbins*, 519 U.S. 452 (1997), and *United States v. Mead Corp.*, 533 U.S. 218 (2001)).

[I]n athletic programs operated by educational institutions or public services and designed for participants 12 years old or older or in the 7th grade or above, it is not an unfair discriminatory practice to restrict membership on an athletic team to participants of one sex whose overall athletic opportunities have previously been limited.

While this statute does not alone resolve the Equal Protection question, it unquestionably establishes as a governmental objective the Minnesota legislature's desire to remedy past discrimination in athletic opportunities. Because, under the intermediate scrutiny standard applicable in gender matters,[5] restriction of a limited number of sports to girls-only is substantially related to this important governmental objective, Plaintiffs' equal protection arguments suffer from the same defects as those they raise under Title IX. *See, e.g., Petrie v. Ill. High Sch. Ass'n,* 394 N.E.2d 855, 862 (Ill. App. 1979) (recognizing "the legitimate and substantial state interest of providing for interscholastic athletic opportunity for girls").

The past deficit of athletic opportunities available to girls, not just at the passage of Title IX in 1972, but at the adoption of Dance Team as a girls-only sport in 1996—a deficit that arguably continues even today given the disparity in boys' and girls' participation levels both in Minnesota and nationwide[6]—fully supports the MSHSL's decision to continue categorizing Dance Team as a girls-

_____

[5] *See, e.g., United States v. Virginia*, 518 U.S. 515, 555 (1996).

[6] *See* nn.1-3, *supra*.

only sport. The District Court properly rejected Plaintiffs' Equal Protection

arguments, just as it correctly refused to adopt their overly narrow reading of Title

IX's goals.[7]

## II. NFHS-Member State Associations Like Defendant MSHSL Should Have Discretion to Further Title IX's Goals by Evaluating and Encouraging Participation By Previously Underrepresented Girls Across All Available Sports.

When MSHSL first recognized Dance Team as a sport in 1996, and decided

that it should be limited to girls, the nationwide athletic participation levels for

girls were, as noted, still markedly lower than those of boys.[8]  Plaintiffs now want

this Court to revisit the MSHSL's classification decision, because if they can show

that Dance Team is more properly considered an extracurricular activity rather than

a sport, their burden under Title IX would arguably be lessened. *See* Appellants'

Br., p. 25 (arguing that "MSHSL's flexibility to engage in sex discrimination

varies" depending on whether Dance Team is properly classified as a sport or as an

extracurricular activity).  But experienced state associations like MSHSL, tasked

with remedying past discrimination and trying to balance participation levels for

boys and girls on a statewide level across all athletic endeavors, should have

---

[7] The NFHS notes that MSHSL has a series of additional grounds, not
addressed in this NFHS amicus brief, supporting the District Court's dismissal of
Plaintiffs' complaint.

[8] *See* n.3, *supra* (NFHS figures showing nationwide girls participation in
high school sports less than 40% in 1995-96).

considerable discretion in these circumstances to evaluate and classify particular competitions as sports. So too, as part of their overall responsibility to ensure equal access to competitive athletics, should they have discretion and flexibility to determine on a statewide level—just as courts grant individual schools flexibility, consistent with the particular needs and interests of their student populations—whether particular activities should be open to both sexes or just one. *See, e.g.*, *Kelley v. Bd. of Trustees*, 35 F.3d 265, 269-72 (7th Cir. 1994) (reviewing with approval university's extended analysis undertaken to evaluate overall, university-wide athletic opportunities available to, and participation by, male and female athletes in identifying which athletic programs to cut due to budgetary restraints, and acknowledging that schools must have flexibility to appropriately meet those goals within the constraints of Title IX); *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 293-94 (2d Cir. 2004) (given the OCR's policy interpretation "that a disparity disadvantaging one sex in one part of a school's athletic program can be offset by a comparable advantage to that sex in another area," Title XI "compliance should not be measured by a 'sport-specific comparison' but rather by examining 'program-wide benefits and opportunities,'" and thus schools "have considerable flexibility in complying with Title IX" and might, for example, provide "better equipment to the men's basketball team than to the women's basketball team" yet still comply with Title IX "if it provided

comparably better equipment to the women's soccer team than to the men's soccer team").

Here the MSHSL's decision to classify Dance Team as a sport was well supported. As the District Court noted, Dance Team has attributes traditionally associated with sports rather than extracurricular activities (Memo. and Order at 5 (App. 297):

> Dance teams are usually administered by a high school's athletic department, and participants are chosen based on athletic ability. There are rules for dance team competitions, standards for competitors, and the MSHSL hosts a competitive state tournament to crown a state champion each year. Competitive dance team bears all of the hallmarks of an interscholastic sport.

Certainly on this record, the MSHSL's decision to classify Dance Team as a sport rather than a simple activity cannot be said to be arbitrary, and there is no basis to second-guess it.

The decision in *Biediger v. Quinnipiac Univ.*, 691 F.3d 85 (2d Cir. 2012), is not to the contrary. There the court, like virtually every court to address these issues, was ultimately concerned about the underrepresentation of *females* in interscholastic athletic competition. Thus, as part of its consideration of whether a school's decision to eliminate the women's interscholastic volleyball program could survive Title IX scrutiny, the court examined whether the school's assertion that competitive cheerleading was a sport was actually an illegitimate attempt to exaggerate women's existing interscholastic athletic opportunities. *See* 691 F.3d at

102-05. The *Biediger* court therefore carefully scrutinized cheerleading, noting that the university did not treat it like a true interscholastic sport in a number of respects. *See id.* at 104-05. One particularly noteworthy factor was that the NCAA, the organization overseeing interscholastic college sports, did not then view cheerleading as a sport. *See id.* at 103-04. Nor did OCR, which had never recognized cheerleading as a sport for Title IX purposes. *See id.*

Here, of course, the Minnesota high school equivalent of the NCAA—the defendant MSHSL—*does* recognize Dance Team as a sport. And so, effectively, does OCR – its evaluation of the MSHSL's actions with respect to Dance Team accepted without reservation the fact that Dance Team was properly considered a sport.

State associations like MSHSL, which exist to coordinate and manage high school athletic competition across all sports and activities in the state, are particularly well placed to make determinations like these. Here, for the past 22 years, Dance Team in Minnesota high school athletics has been considered a girls' sport as part of the MSHSL's good-faith efforts to balance athletic participation and to remedy past discrimination against girls. The District Court correctly refused to disturb that finding.

Given the well-documented past lack of opportunities for girls to compete in interscholastic high school athletics, both in Minnesota and nationwide, the

MSHSL's decision to classify Dance Team as a girls-only sport is fully consistent with Title IX. It is just as consistent with the Equal Protection Clause, particularly where the Minnesota legislature has expressly recognized the exact goal of compensating for past discrimination as an important governmental objective.

## CONCLUSION

The District Court's order denying preliminary injunctive relief should be affirmed.

Dated: November 26, 2018

    /s/ William E. Quirk
WILLIAM E. QUIRK
POLSINELLI PC
900 West 48th Place, Suite 900
Kansas City, MO 64112
(816) 753-1000; FAX (816) 753-1536
wquirk@polsinelli.com

*Attorneys for* Amicus Curiae *National Federation of State High School Associations*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitations defined by Fed. R. App. P. 29(a)(5) and 32(a)(7)(B)(1). This brief contains 2,987 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) in that this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

Dated: November 26, 2018

   /s/ William E. Quirk
WILLIAM E. QUIRK
POLSINELLI PC
900 West 48th Place, Suite 900
Kansas City, MO  64112
(816) 753-1000; FAX (816) 753-1536
wquirk@polsinelli.com

*Attorneys for* Amicus Curiae *National Federation of State High School Associations*

## CIRCUIT RULE 28A(H) CERTIFICATION

I hereby certify that I have filed electronically, under Circuit Rule 28A(h), a version of the brief in non-scanned .pdf format. I hereby certify that the file has been scanned for viruses and that it is virus-free.


Dated: November 26, 2018        /s/ William E. Quirk

WILLIAM E. QUIRK
POLSINELLI PC
900 West 48th Place, Suite 900
Kansas City, MO 64112
(816) 753-1000; FAX (816) 753-1536
wquirk@polsinelli.com

*Attorneys for* Amicus Curiae *National Federation of State High School Associations*

# CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2018, an electronic copy of the Brief

of *Amicus Curiae* National Federation of State High School Associations in

Support of Appellees and Affirmance was filed with the Clerk of the Court for the

United States Court of Appeals for the Eighth Circuit by using the CM/ECF

system. I further certify that the following participants in this case are registered

CM/ECF users and that service of the Brief will be accomplished by the CM/ECF

system:

| | |
|---|---|
| Anastasia Boden<br>Timothy R. Snowball<br>Joshua P. Thompson<br>Caleb R. Trotter<br>PACIFIC LEGAL FOUNDATION<br>930 G Street<br>Sacramento, CA 95814<br>(916) 419-7111<br><br>*Counsel for Plaintiffs-Appellants*<br>*D.M. and Z.G.* | Erick G. Kaardal<br>MOHRMAN & KAARDAL<br>150 Fifth Street S., Suite 3100<br>Minneapolis, MN 55402<br>(612) 465-0927<br><br>*Counsel for Plaintiffs-Appellants*<br>*D.M. and Z.G.* |
| Kevin M. Beck<br>Joseph A. Kelly<br>Patrick J. Kelly<br>KELLY & LEMMONS, P.A.<br>2350 Wycliff Street, Suite 200<br>Saint Paul, MN 55114<br>(651) 224-3781<br><br>*Counsel for Defendants-Appellees*<br>*Minnesota State High School League,*<br>*Bonnie-Spohn-Schmaltz, Erich Martens,*<br>*Craig Perry, and Bob Madison* | Mallory V. Mayse<br>MAYSE LAW FIRM<br>Suite 411-Guitar Building<br>28 North Eighth Street<br>Columbia, MO 65201<br>(573) 875-1988<br><br>*Counsel for* Amicus Curiae *Missouri*<br>*State High School Activities Association*<br>*and Lead Counsel for Other* Amici<br>Curiae *State High School Activities*<br>*Associations* |

Dated: November 26, 2018        /s/ William E. Quirk
                                WILLIAM E. QUIRK
                                POLSINELLI PC
                                900 West 48th Place, Suite 900
                                Kansas City, MO  64112
                                (816) 753-1000; FAX (816) 753-1536
                                wquirk@polsinelli.com

                                *Attorneys for* Amicus Curiae *National Federation of State High School Associations*